UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CARLTON HARRIS**<br>204 Newcomb Street, SE<br>Washington, DC 20032<br><br>Plaintiff,<br><br>    v.<br><br>**GOVERNMENT OF THE DISTRICT OF COLUMBIA,**<br><br>**SERVE:**<br><br>Mayor Muriel Bowser<br>Designee Darlene Fields<br>Civil Litigation Division, Ste 6000 South<br>441 4th Street, NW<br>Washington, DC 20001<br>202-724-6507<br><br>and<br><br>Attorney General Karl Racine<br>Designee Darlene Fields<br>Civil Litigation Division, Ste 6000 South<br>441 4th Street, NW<br>Washington, DC 20001<br>202-724-6507<br><br>Defendant. | Civil Action No.: |

**COMPLAINT FOR INDIVIDUAL MONEY DAMAGES AND JURY DEMAND**

**Introduction**

1.    This is an action brought by Mr. Carlton Harris because the Government of the District of Columbia (the "District of Columbia" or the "District") through its Department of Correction ("DOC") held him past his "Release Date," the date he was entitled to release from custody because the DOC's basis to restrain him had expired.

1

2.      The DOC detained Mr. Harris in the DC Jail from 3/29/2017 until about June 15, 2018 on a United States Marshal Service ("USMS") commitment even though the DOC did not have a legal basis to hold him more than a day or two.

3.      Over-detentions and early releases are flip sides of the same problems indicating a constitutionally inadequate release system which cannot release prisoners on their Release Dates, especially as it relates to commitments by the USMS, so this case is related to <u>USA v. Harris</u>, 18-cr-00028 (EGS). *See* Order docketed 04/25/2018 (compelling District to explain in writing the circumstances surrounding the erroneous release of Mr. Jarrell Harris).

4.      During that approximately three month period the DOC did not take Mr. Harris before a judge for a release hearing until about June 15, 2018.

5.      In fact, the DOC did not release Mr. Harris from courthouse after he had been released. Instead, the DOC transport officers returned Mr. Harris back to the DC Jail and kept him there until late that night before releasing him.

6.      Mr. Harris brings both § 1983 Constitutional claims and District of Columbia law claims.

7.      Mr. Harris also brings common law (false imprisonment) and District of Columbia statutory over-detention claims. Mr. Harris timely submitted a timely "12-309" notice to the District pursuant to D.C. Code § 12-309.

## Jurisdiction and Venue

8.      This Court has jurisdiction over Mr. Harris' § 1983 claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and this Court has jurisdiction over Mr. Harris's District of Columbia law claims pursuant to 28 U.S.C. § 1367.

9.    Venue is appropriate in this District.  Each of the claims for relief arose in this judicial district.

Parties

10.    Plaintiff Carlton Harris held past his Release Date at the DC Jail and he was strip searched without reasonable suspicion.

11.    The Government of the District of Columbia (hereinafter the "District of Columbia" or the "District") is a municipal corporation capable of being sued under D.C. Code § 1-102.

FACTUAL ALLEGATIONS

12.    Mr. Harris was committed to the DC Jail by deputies of the USMS on about 3/29/2017 as an "intransit" commitment on the basis of a USMS warrant because he had failed to appear in federal court in Maryland on a traffic charge.

13.    Although it was obvious from the commitment documents and the entries in "JACCS" (the DOC's inmate management system database) and the paper records in the Records Office (the office in the DOC responsible for releasing inmates on time) the DOC did not   and the DC Jail until about June 15, 2017.

14.    An "intransit" is a type of intake in which a commitment document (USM Form 41) is used to detain/holdover an individual who has not been charged with an offense from D.C. Superior Court.

### Components of the Department of Corrections

15.     The District of Columbia Department of Corrections ("DOC") holds prisoners committed by the District of Columbia Superior Court, the District of Columbia District Court, and other agencies, in the Central Detention Facility ("DC Jail"), the Correctional Treatment Facility ("CTF") and at various halfway houses located in the District of Columbia.

16.     Most prisoners held in the custody of the Department of Corrections are either pre-trial detainees, misdemeanants serving sentences, or parole and probation violators.

17.     The USMS also commits prisoners to the DOC.

18.     USMS prisoners are often held on warrants.

### The Inmate Management System

19.     The records office located at the DC Jail ("Records Office") is responsible for administering and maintaining the records, including the judgment and commitment files, of all persons housed at the DC Jail, CTF and the halfway houses.

20.     The Records Office is responsible for ensuring that all persons housed at the DC Jail, CTF and the halfway houses are released on their Release Dates specified in their court orders or otherwise.

21.     All prisoners housed at a DOC facility are booked into the DOC through the R&D post at the DC Jail.

22.     All commitments and releases in and out of the DC Jail are processed by the Records Office.

23.     The DOC follows a policy and practice that once a prisoner is committed to DOC custody the DOC will not release them or take steps to investigate whether they should be released until the DOC receives a release order for that person.

24.     Sometimes the DOC accepts a prisoner at the DC Jail for commitment, or receives a returning prisoner (e.g., returning from one of the local courthouses) with commitment or release papers.

25.     The DOC runs a paper system for tracking cases and releases and misplaces jackets, misfiles orders, and runs the system manually.

26.     The major reason the DOC runs a paper based release system in the 21st Century is that none of the DOC inmate management system database or the courthouse docketing databases are capable of communicating with each other.

27.     So all communication between the Records Office and the courthouses is via a "sneaker" network of transport officers carrying paper release and committeemen orders.

28.     The "inefficient implementation" of the District's release procedures is the result of official "acquiescence in a longstanding practice or custom which constitutes the standard operation procedure of the local government entity."

### USMS commitments

29.     The District has had problems with commitments by USMS deputies for years going back to the time covered by the Bynum case.

30.     But USMS can still "commit" prisoners to the Jail and then take them out using a USMS form (Form 40 or 41).

31.     The problem is, the USMS commits a prisoner like Carlton Harris and then the USMS may leave him there instead of returning to pick them up.

32.     The District of Columbia, and its agents and employees, have had a longstanding custom and practice of detaining people past their release dates.

33.     The District also has had longstanding problems with keeping track of persons committed to the DOC on intransit commitments because the DOC accepts the prisoner on a USMS (Form 41) without demanding the corresponding Form 41 indicating when the person should be picked up as the Records Office Manual requires.

34.     The DOC Records Office Manual requires that when the USMS commits someone on a intransit commitment (like Carlton Harris) the USMS are supposed to provide two forms [Forms 40 or Forms 41] and the Jail staff are supposed to insist on receiving two forms - the the IN Form 41 commitment form and also a second form, the OUT Form 41, saying when the prisoner is supposed to be picked up by the USMS.

35.     DOC compounds the problem because the DOC's official policy and practice is that it has no obligation to take steps to ensure that prisoners committed to the DOC are released.

36.     The DOC's official policy and practice with respect to such prisoners is to just leave them until someone comes to remove them or a judge sends a release order.

37.     Since most prisoners at the DOC are serving brief misdemeanor sentences or are held pretrial the DOC should be on notice when a person is held 30 days without some order from a judge or court appearance.

38.     The DOC has a financial interest in keeping USMS prisoners in the Jail because the USMS pays the District on a per day basis to house its prisoners.

**Plaintiff Carlton Harris' Overdetention by the DC Jail**

39.     On or about 3/28/2017 Plaintiff Carlton Harris was arrested by the MPD on a District of Columbia misdemeanor charge of simple assault and he was taken to the Superior Court for his initial appearance.

40.     The U.S. Attorney – the prosecuting authority for the case – no-papered the charge.

41.     But, instead of releasing Mr. Harris from the courthouse, the DOC staff handed Mr. Harris over to the Marshal's custody because there was an outstanding traffic warrant for him issued by the District Court in Maryland.

42.     Mr. Harris was then transported to the DC Jail where he was booked into the DC Jail on an intransit booking.

43.     Mr. Harris remained in the DC Jail until June 15, 2017 when the DOC took him to the District Court in the District of Columbia for a release hearing where he was ordered released.

44.     The DOC should have released Mr. Harris or sent him to court for a release hearing after no USMS arrived to pick him up after committing him on an intransit commitment.

45.     As a result of the lengthy over-detention Mr. Harris lost his union job as a roofer.

## Substantive Allegations

## Claim 1

### § 1983 Liability of District of Columbia for Overdetentions

46.     Mr. Harris  realleges and incorporate by reference all allegations set forth in this Complaint.

47.     The District of Columbia, and its agents and employees, have had a longstanding custom and practice of detaining people past their Release Dates.

48.     The District's actions, and failure to act, as described above, directly and proximately and affirmatively were the moving force behind the violations of Mr. Harris's substantive Fifth Amendment rights.

49.     The District was deliberately indifferent to his rights.

50.     The District's conduct was the moving force behind the violation of Mr. Harris's rights.

51.     Accordingly, Mr. Harris is entitled to general and emotional distress and lost employment damages to be determined at trial.

## Claim 2

### § 1983 Liability of District of Columbia for failing to provide Mr. Harris with a release hearing

52.     Mr. Harris realleges and incorporates by reference all allegations set forth in this Complaint.

53.     The District of Columbia had Mr. Harris is custody from 3/29/2017 till January 15, 2017 when it finally took Mr. Harris to the District courthouse for a release hearing.

54.     The District should have taken Mr. Harris to the courthouse for a release hearing with several days.

55.     The DOC did not take Mr. Harris to court for a release hearing because its policy and practice is just to leave people in the jail until some Marshal calls for them or a judge issues a release order.

56.     The District was deliberately indifferent to his 5th Amendment procedural due process rights.

57.     The District's conduct was the moving force behind the violation of Mr. Harris's rights.

58.     Accordingly, Mr. Harris is entitled to general and emotional distress and lost employment damages to be determined at trial.

## Claim 3

## Common Law Liability of District of Columbia for False Imprisonment

59.     Mr. Harris realleges and incorporate by reference all allegations set forth in this Complaint.

60.     District's employees were acting within the scope of their employment at all times.

61.     The District is liable for the conduct of its employees in *respondeat superior*.

62.     The District's actions, and failure to act, as described above, were the proximate cause of Mr. Harris' common law rights to be free from false arrest after the DOC's duty to release im arises.

63.     The District is liable for the conduct of its employees in *respondeat superior*.

64.     The District was deliberately indifferent to their rights.

65.     Accordingly, Mr. Harris  entitled to general and emotional distress and lost employment damages to be determined at trial.

## Prayer for Relief

WHEREFORE, plaintiffs respectfully request that this Court grant the following relief:

1.     grant a jury trial on all claims so triable;

2.     award all named plaintiffs compensatory and consequential damages in an amount to be determined at trial;

3.     award plaintiffs attorneys' fees and costs incurred in bringing this action under 42 U.S.C. § 1988; and

4.      grant such other relief as this Court deems just and proper.

Respectfully submitted,

/s/ William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579

717 D Street, N.W., Ste 300
Washington, DC 20004
202-824-0700

## Jury Demand

Plaintiffs demand a jury of six as to all claims so triable.

/s/ William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for Mr. Harris