# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
CARLTON J. HARRIS,     )
            )
     Plaintiff,   )
            )
   v.       )   Civil Action No. 18-2390 (ABJ)
            )
GOVERNMENT OF THE   )
DISTRICT OF COLUMBIA,  )
            )
     Defendant.  )
_____)

## MEMORANDUM OPINION

Plaintiff Carlton J. Harris brought this action against the District of Columbia for allegedly detaining him in the D.C. jail beyond his release date. Am. Compl. [Dkt. #8] ¶ 1. Plaintiff claims that the District of Columbia, through its Department of Corrections ("DOC"), is liable for violating his Fifth Amendment due process rights under 42 U.S.C. § 1983. *Id.* ¶¶ 121–33. He also brings a common law claim against the District for false imprisonment. *Id.* ¶¶ 134–41.

Defendant moved to dismiss the section 1983 claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Def.'s Mot. for Partial Dismissal [Dkt. #9] ("Def.'s Mot."). Because the Court finds that plaintiff adequately pled claims of municipal liability based on a theory of deliberate indifference, the Court will deny defendant's motion.

## BACKGROUND

### I. Factual Allegations

Plaintiff alleges that on or about March 29, 2017, he was committed to the D.C. jail by the U.S. Marshals Service ("USMS") pursuant to an outstanding warrant against him for failing to

appear in Maryland federal court on a traffic violation. Am. Compl. ¶ 15. His detention was supposed to be an "in-transit" hold – a temporary form of commitment used by USMS to transport individuals from place to place, usually lasting "a night or two." *Id.* ¶¶ 15, 17. Instead, plaintiff was not released until June 15, 2017, over two months after his initial commitment. *Id.* ¶ 16. According to plaintiff, the DOC did not realize the error because it failed to obtain the necessary paperwork when he was committed. *Id.* ¶ 18. Consequently, instead of releasing him or providing for a release hearing, as plaintiff contends the DOC should have done for an in-transit inmate, *id.* ¶ 19, the DOC detained him unlawfully for weeks.

Plaintiff contends that defendant knew that overdetentions by the DOC were not uncommon at the time of his detention. Am. Compl. ¶¶ 76–77. He identifies several problematic practices, including DOC's reliance on an outdated "paper driven inmate system," which is prone to errors and delays, *id.* ¶¶ 48–71, and DOC's failure to obtain the proper commitment forms from USMS that indicate when an inmate should be picked up. *Id.* ¶ 105. He cites a study by an outside consultant about the DOC's detention and release processes, which reported fourteen overdetentions between 2015 and 2018,[1] *id.* ¶ 77, citing Resp. to Oct. 19, 2018 Min. Order at 12, *United States v. Harris*, No. 1:18-cr-00028 (D.D.C. Dec. 20, 2018) [Dkt. # 40-1] ("The Moss Report"), as well as prior lawsuits against the DOC for overdetentions. *Id.* ¶¶ 84, 102, 117, citing *Smith v. District of Columbia*, 306 F. Supp. 3d 223 (D.D.C. 2018); *Barnes v. District of Columbia*, 242 F.R.D. 113 (D.D.C. 2007); *Bynum v. District of Columbia*, 412 F. Supp. 2d 73 (D.D.C. 2006). According to plaintiff, the District was well aware of its overdetention problems "[b]ecause of

---

1 The DOC filed this study in another case in this district responding to the judge's order to explain the circumstances of the defendant's "untimely release." Am. Compl. ¶ 114; *see also United States v. Harris*, No. 1:18-cr-00028 (D.D.C. Dec. 20, 2018).

litigation, D.C. Council hearings, annual oversight reports, and outside consultant reports." Am. Compl. ¶ 76.

## II.   Procedural History

On October 17, 2018, plaintiff filed his complaint with this Court. Compl. [Dkt. #1]. He filed an amended complaint on March 18, 2019. Am. Compl. Plaintiff raises three claims: Count One alleges 42 U.S.C. § 1983 liability for overdetention, *id.* ¶¶ 121–26, Count Two alleges section 1983 liability "for failing to provide [plaintiff] with a release hearing," *id.* ¶¶ 127–33, and Count Three alleges false imprisonment. *Id.* ¶¶ 134–41.

On April 1, 2019, the District moved for partial dismissal, seeking to dismiss Counts One and Two under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Def.'s Mot. The District did not object to the false imprisonment claim in Count Three. *Id.* With respect to Counts One and Two, the District argued that plaintiff failed to state a claim under section 1983 because he "alleg[ed] that his over-detention was the result of an oversight . . . , rather than alleging that his over-detention was the result of an unconstitutional custom or policy," as the law requires. Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. [Dkt. #9] ("Def.'s Mem.") at 7. Plaintiff opposed the motion, arguing that he had in fact identified a custom or policy in the District's "deliberate indifference" to its constitutional violations. Pl.'s Opp. to Def.'s Mot. [Dkt. # 11] ("Pl.'s Opp.") at 7–8. In its reply, the District contended that plaintiff's deliberate indifference claim was conclusory. Reply to Pl.'s Opp. [Dkt. #12] ("Def.'s Reply") at 2–3.

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*,

the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679, citing *Twombly*, 550 U.S. at 556.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In evaluating a motion to dismiss under Rule 12(b)(6), a court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005). Therefore, when considering a motion to dismiss, a court must construe a complaint liberally in the plaintiff's favor. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions. *Id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may

ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

The Court will deny defendant's motion to dismiss plaintiff's section 1983 claims at this early stage because plaintiff has pled his deliberate indifference theory with sufficient specificity.

Section 1983 of the Civil Rights Act provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

A municipality can be liable as a "person" under section 1983 "only if the municipality is itself responsible for an unconstitutional deprivation of rights." *Atchinson v. District of Columbia*, 73 F.3d 418, 420 (D.C. Cir. 1996), citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). To determine whether a plaintiff has stated a claim for municipal liability, courts conduct a two-step inquiry. *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003), citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). First, the court determines whether the complaint states a claim for "a predicate constitutional violation." *Baker*, 326 F.3d at 1306, citing *Collins*, 503 U.S. at 120. Second, if it does, then the court proceeds to determine whether the complaint states a claim that "a custom or policy of the municipality caused the violation." *Baker*, 326 F.3d at 1306, citing *Collins*, 503 U.S. at 120; *Monell v. Dep't of Soc. Servs.*, 436 U.S.

at 694. To satisfy this requirement, plaintiff must allege an "affirmative link" such that the municipality's custom or policy was the "moving force behind the constitutional violation." *Baker*, 326 F.3d at 1306 (citations omitted). In this case, the District concedes that plaintiff has sufficiently stated a predicate constitutional violation through his Fifth Amendment claim. Def.'s Mem. at 5; Def.'s Reply at 1–2. Only the second step of the inquiry is in dispute.

A municipality cannot be held liable for the conduct of its employees based on the principle of *respondeat superior*. *Singletary v. District of Columbia*, 766 F.3d 66, 72 (D.C. Cir. 2014), citing *Monell*, 436 U.S. at 691. Only if the employees acted "pursuant to municipal policy or custom" is the municipality liable for their violations. *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004), citing *Monell*, 436 U.S. at 694; *see also Connick v. Thompson*, 563 U.S. 51, 60–61 (2011), quoting *Monell*, 436 U.S. at 691 ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury.").

The D.C. Circuit has ruled that the necessary municipal policy or custom may be established with evidence of the following: (1) the existence of an explicit government policy; (2) the action of a government policymaker; (3) the fact that a policymaker knowingly ignored a practice that was consistent enough to create a custom; or (4) the fact that the government failed to "respond to a need . . . in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Baker*, 326 F.3d at 1306 (citations omitted); *see also Jones v. District of Columbia*, 322 F. Supp. 3d 78, 85 (D.D.C. 2018), quoting *Hunter v. District of Columbia*, 824 F. Supp. 2d 125, 133 (D.D.C. 2011) ("There are four basic categories of municipal action that . . . establish municipal liability: (1) express municipal policy; (2) adoption by municipal policymakers; (3) custom or usage; and (4) deliberate indifference.").

Here, plaintiff relies on a theory of deliberate indifference to support his claims. Am. Compl. ¶¶ 124, 131. Deliberate indifference is an objective inquiry: courts ask whether the municipality "'knew or should have known of the risk of constitutional violations,' but did not act." *Jones v. Horne*, 634 F.3d 588, 601 (D.C. Cir. 2011), quoting *Baker*, 326 F.3d at 1306. This standard is "stringent," *Connick*, 563 U.S. at 61, quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997), and mere negligence is insufficient. *Horne*, 634 F.3d at 601, citing *Warren*, 353 F.3d at 39.

Deliberate indifference "does not require the [municipality] to take reasonable care to discover and prevent constitutional violations. It simply means that, faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the [municipality] may not adopt a policy of inaction." *Warren*, 353 F.3d at 39, citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994); *see also Connick*, 563 U.S. at 61, quoting *Bryan Cty.*, 520 U.S. at 410 ("Deliberate indifference . . . requir[es] proof that a municipal actor disregarded a known or obvious consequence of his action.").

The most common way of establishing deliberate indifference is by demonstrating the municipality's failure to train its employees, but that is not the only method. *Page v. Mancuso*, 999 F. Supp. 2d 269, 282–83 (D.D.C. 2013). Courts have also found deliberate indifference in, for example, a municipality's failure to respond to repeated complaints about misconduct. *See Singh v. District of Columbia*, 881 F. Supp. 2d 76, 87 (D.D.C. 2012) (finding deliberate indifference where plaintiff reported harassment by a police officer on five separate occasions); *Muhammad v. District of Columbia*, 584 F. Supp. 2d 134, 139 (D.D.C. 2008) (finding plaintiff stated claim for deliberate indifference where the District failed to take action against a police officer who had been the subject of at least fourteen previous complaints).

Such repetition bolsters claims of deliberate indifference. In the failure-to-train context in particular, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary'" to sustain a claim. *Connick*, 563 U.S. at 62, quoting *Bryan Cty.*, 520 U.S. at 409. But even without a preexisting pattern of violations, a single incident can establish deliberate indifference where the unconstitutional consequences are "highly predictable" and "patently obvious." *Id.* at 64 (citation omitted).

To survive a motion to dismiss, a plaintiff pleading a deliberate indifference claim must allege specific facts that would demonstrate the alleged pattern of misconduct. For instance, a complaint should state the "number, nature, and timing . . . of [the] misconduct." *Bell v. District of Columbia*, 82 F. Supp. 3d 151, 159 (D.D.C. 2015). When courts dismiss municipal liability claims based on a custom or policy, it is because the complaint does not contain any facts supporting the inference that the municipality was deliberately indifferent to individuals' constitutional rights, or because it consists of bare allegations. *See, e.g.*, *Pollard v. District of Columbia*, 698 F. App'x. 616, 621 (D.C. Cir. 2017) (dismissing a claim where plaintiffs did not make any plausible factual allegations that District officers previously engaged in similar conduct to that at issue or have a pattern or custom of engaging in such practices); *Cherry v. District of Columbia*, 330 F. Supp. 3d 216, 226 (D.D.C. 2018) (granting a motion to dismiss because, "[w]hile plaintiff posits that there was a 'pattern'" of unconstitutional conduct, she did not "ple[a]d any *facts* that would demonstrate" the supposed pattern) (internal quotation marks omitted); *Bell*, 82 F. Supp. at 159 (granting a motion to dismiss because the plaintiff's complaint lacked "factual content" to support her "generalized assertion" of repeated misconduct).

Here, contrary to defendant's assertion otherwise, plaintiff alleges a substantial body of facts that, if true, could support a finding of deliberate indifference on the part of the District.

Plaintiff has put forth specific descriptions of several problematic recordkeeping practices, as well as names, dates, and figures. In his complaint, he identifies the following problems within DOC:

- The DOC failed to obtain prisoners' commitment documents when they arrived at the jail, Am. Compl. ¶ 18, so "no one in the DOC kn[ew] when or whether the person [was] entitled to release." *Id.* ¶ 68. Specifically, for in-transit commitments by USMS, the DOC "accept[ed] the prisoner . . . without demanding the corresponding Form 41 indicating when the person should be picked up." *Id.* ¶ 105.

- Even when inmate records were lacking, the DOC's "official policy and practice [was] that it ha[d] no obligation to take steps to ensure that prisoners committed to the DOC are released." *Id.* ¶ 107. Until someone outside the jail called for the prisoner's release, the prisoner "s[a]t in the DOC system indefinitely." *Id.* ¶ 45.

- The staff of the DOC's Records Office, which was responsible for deciding when to release inmates, *id.* ¶ 31, failed to undergo formal training. *Id.* ¶¶ 46–47.

- The DOC used an outdated "paper driven inmate management system," which was prone to errors and delays, as opposed to an electronic system. *Id.* ¶¶ 48–71.

- The DOC lacked a reliable transportation system for delivering paper records. *Id.* ¶ 95.

- The Records Office miscalculated the length of inmate sentences because it did not use an automated system to make the calculations and failed to incorporate good behavior credit. *Id.* ¶¶ 85–89.

And he alleges that several individuals besides himself were over-detained. *See* Am. Compl. ¶ 77 (citing a study by an outside consultant about the DOC's detention and release processes, which reported fourteen overdetentions between 2015 and 2018); *id.* ¶¶ 115–20 (referencing "numerous over-detentions" based on DOC data, other cases, and personal knowledge).

Finally, plaintiff alleges that the District was aware of its overdetention problems "[b]ecause of litigation, D.C. Council hearings, annual oversight reports, and outside consultant

reports." Am. Compl. ¶ 76.[2]  Significantly, plaintiff points to previous lawsuits against the District concerning overdetention – *Smith*, *Barnes*, and *Bynum* – that made or should have made the District aware of the problem. *Id.* ¶¶ 84, 102, 117. Courts in this jurisdiction have found that litigation about the claim at issue gives rise to knowledge. *See Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 283 (D.D.C. 2011) ("There is no dispute that the District was aware, or at least should have been aware, of overdetention problems at its jails beginning . . . when the *Bynum* lawsuit [concerning similar overdetention problems] was filed."); *see also Cherry*, 330 F. Supp. 3d at 216 (dismissing a section 1983 claim where the plaintiff "ha[d] not pointed to other complaints . . . or other lawsuits against the District based on similar . . . claims"). Thus, plaintiff's complaint supplies facts beyond the mere conclusion that the District "knew or should have known of the risk of constitutional violations, but did not act." *Horne*, 634 F.3d at 601, quoting *Baker*, 326 F.3d at 1306.

Accordingly, plaintiff's section 1983 claims are not insufficient on their face for purposes of Rule 12(b)(6), and they will proceed.[3]

---

2     Defendant points out that the Moss Report could not have contributed to the District's knowledge since it was published after plaintiff's overdetention. Def.'s Mem. at 7. That may be true, but plaintiff may be able to show that DOC was aware of the facts summarized in the report.

3     The Court notes, though, that plaintiff will be bound to establish the necessary causation element at the summary judgment stage, *see Baker,* 326 F.3d at 1306, and to the extent he seeks to rely on inadequate training as an aspect of his deliberate indifference claim, it will be necessary to be considerably more specific. *See Connick*, 563 U.S. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.").

**CONCLUSION**

For the foregoing reasons, the Court will deny the District's motion for partial dismissal.

A separate order will issue.



AMY BERMAN JACKSON
United States District Judge

DATE:  August 6, 2019